RECEIVED
NOV 17 2016
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| JEROLENE ETHEL KAY<br>COOPER-MCCLINTOCK, ET AL. | DOCKET NO. 1:11-cv-1934 |
| VERSUS | |
| UNITED STATES OF AMERICA | JUDGE DEE D. DRELL<br>MAG. JUDGE PEREZ-MONTES |

## JUDGMENT

Before the court is the Report and Recommendation of the Magistrate Judge (Doc. 158) regarding the United States' motion to dismiss. (Doc. 145). Following a *de novo* review of the record, including the objections filed by the United States (Doc. 160) and the plaintiffs (Doc. 163), the court declines to adopt the Report and Recommendation for the reasons stated herein.

### I. Background

Plaintiffs initially filed a grievance with the Department of Veterans Affairs for the wrongful death of Don Arch Cooper, a patient at the Veterans Affairs Medical Center ("VAMC") in Pineville, Louisiana from February 4, 2005 until his death on February 19, 2005. Plaintiffs then filed the instant lawsuit against the United States pursuant to the Federal Tort Claims Act (FTCA). For the sake of judicial efficiency, we incorporate by reference the factual summaries provided in this court's prior rulings (Docs. 33, 54, 96) and make reference to pertinent portions of Mr. Cooper's medical records herein.

Mr. Cooper, arrived at the VAMC for treatment of nosocomial (hospital-acquired) pneumonia, aspiration and neurogenic dysphagia on February 4, 2005. All necessary medical

treatment was rendered from the time of admission until February 15, 2005.[1] It was at that time that Mr. Cooper began having significant trouble swallowing and, despite being at risk of aspirating food and/or water, refused a feeding tube.

Dr. Shivani Negi ordered a competency evaluation and a bioethics consultation for Mr. Cooper the morning of February 15, 2005 noting his repeated request for food and water and refusal for placement of a feeding tube. (Doc. 39-2, p. 51-52). Later that day, an Advance Directive signed by Mr. Cooper in October 1, 2003 was located and scanned into his medical record. (Id. at 42, 50-51).

On the morning of February 16, 2005, Dr. Horacio P. Guerra saw Mr. Cooper. Dr. Guerra noted that Mr. Cooper continued to request food. Dr. Guerra ordered a puree diet which was administered and immediately terminated because Mr. Cooper aspirated the food. Dr. Guerra noted he would discuss the case with Dr. Negi at multidisciplinary rounds. (Id. at 44-45).

Dr. Scott Gremillion, the Associate Chief of Staff of Geriatrics, visited Mr. Cooper that afternoon to perform a bioethics consultation pursuant to Dr. Negi's request. In speaking with Mr. Cooper, Dr. Gremillion learned that Mr. Cooper understood he was at risk for aspirating food and water but still wanted to eat and drink. Mr. Cooper again refused a feeding tube.

Dr. Gremillion determined that even though Mr. Cooper's desire to resume eating and drinking was risky, it was ethical to abide by his wishes. Dr. Gremillion recommended a puree diet and the use of alternative means for administering medications (such as crushing drugs and administering in pudding or applesauce). He also noted that Mr. Cooper had an Advance Directive

---

[1] A "Patient Rights?Advance Directives Acknowledgment Statement" was completed on Mr. Cooper's behalf at the VAMC on February 4, 2004. This form indicates that Mr. Cooper stated he had not executed a Living Will/Advance Directive, Durable Power of Attorney for Healthcare, given VAMC a copy of any such documents or completed an organ donor card. (Doc. 39-2, p. 24).

2

which requested "Do Not Resuscitate, no ventilation, no feeding tubes, no transfer to ICU." (Id. at 42-44).

Dr. Guerra returned to see Mr. Copper that evening and implemented care pursuant to Mr. Cooper's Advance Directive noting a diagnosis of end stage of Parkinson's disease and a poor prognosis. (Id. at 41). CPR, mechanical ventilation, IV antibiotics, feeding tubes, chemotherapy, IV fluids, transfusions and dialysis were ordered withdrawn and/or withheld pursuant to Mr. Cooper's wishes. (Id. at 42). Dr. Guerra noted the members of Mr. Cooper's treatment team included Social Worker - Michael Roach, and Consultant - Dr. Gremillion. (Id.).

On February 17, 2005, Dr. David C. Daniels, Jr., a clinical psychologist, met with Mr. Cooper to conduct the competency consultation ordered by Dr. Negi. During the visit, Mr. Cooper indicated that he had changed his mind and now wanted "all 'helpful treatment'". (Id. at 37). Though Mr. Cooper showed mild to moderate dementia in terms of memory, Dr. Daniels found him competent to make his own medical decisions. Accordingly, he called the nurse on duty and informed her that Mr. Cooper was now asking for all helpful treatment. Dr. Daniels noted the nurse stated she was aware that Mr. Cooper had changed his mind, and he suggested she make Mr. Cooper's physician aware of the change as he believed Mr. Cooper was still considered to be DNR. (Id. at. 37-38).

On February 18, 2005, Mr. Roach reviewed the competency evaluation. He entered Mr. Cooper's room and asked him about the feeding tube. Mr. Cooper stated "whatever the doctor thinks". Despite Mr. Roach's encouragement for Mr. Cooper to make his own decision, Mr. Cooper repeated that he left the decision to the doctor. Mr. Roach noted that he "presented the above information to Dr. Guerra [that] afternoon." (Id. at 35).

The following day, Mr. Cooper passed away. He was discovered by LPN Helen G. Briggs with agonal breathing and an undetectable blood pressure. In light of Mr. Cooper's "current active DNR", CPR was not performed. (Id. at 31).

## II. Law and Analysis

The United States' motion to dismiss seeks to dismiss "any and all claims in Plaintiffs' Complaint and Amended Complaints against the United States based upon allegedly negligent treatment rendered to Don Arch Cooper by Dr. Hersham Hassan and Dr. Horacio Guerra." (Doc. 145). Without undertaking a determination as to whether or not either doctor was in fact an independent contractor, the Magistrate Judge found that the independent contractor exception could not be used to shield the United States from liability where employees are also alleged to have acted negligently in caring for and treating Don Arch Cooper. Though we do not disagree with the statement as a whole, we do disagree with its application to the instant motion as the United States is not seeking dismissal of the entire case based on that motion. Rather, it asks the court only to find Drs. Hassan and Guerra to be independent contractors and then carve out and dismiss those claims against the United States that are based upon the negligence or fault of Drs. Hassan and/or Guerra.

### A. Jurisdiction

The plaintiffs make two arguments in their Objection to Report and Recommendation (Doc. 163): (1) that the United States cannot present new evidence in its objection to the report, and recommendation and (2) that the United States should not be able to seek dismissal of plaintiffs' claims for the negligent acts undertaken by Drs. Hassan and Guerra pursuant to a Rule 12(b)(1) motion to dismiss. Plaintiffs are mistaken as to both contentions.

Local Rule 74.1(B) states, "[a] district judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject or modify in whole or in part, the findings or recommendations made by the magistrate judge. **The judge may also receive further evidence** or recommit the matter to the magistrate judge with instructions." Accordingly, this court retains the discretion to accept new evidence in this matter. Nevertheless, the "new" evidence submitted by the United States has not been considered as it was irrelevant to reaching this determination.

With respect to plaintiffs' claim that the United States improperly sought dismissal of the claims based on a lack of jurisdiction, we note that federal courts are courts of limited jurisdiction and absent jurisdiction conferred by statute or the Constitution, they lack the power to adjudicate claims. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375 (2004). Moreover, as explained in Broussard v. U.S., 989 F.2d 171 (5th Cir. 1993),

> 'It is elementary that "[t]he United States, as a sovereign, is immune from suits save as it consents to be sued ... and the terms of its consent to be sued in any court defines that court's *jurisdiction* to entertain the suit."' The United States has consented to suits pursuant to the terms of the Federal Tort Claims Act, but this consent is limited by those terms. **'Where no such consent exists, a district court has no jurisdiction to entertain a suit against the United States.'** '[T]he District Court is vested with authority to inquire *at any time* whether the[ ] conditions [to the exercise of its jurisdiction] have been met.'

Id. at 176. (Bold supplied) (Internal Citations Omitted). Accordingly, this court MUST not only determine whether it can entertain claims asserted against the United States based upon the actions of individuals who may or may not be its employees, but it properly has the right to make that determination at any time. Accordingly, we shall determine whether Drs. Hassan and Guerra were independent contractors or employees of the VAMC.

5

### B. Independent Contractor

"[T]he critical factor in determining whether an individual is an employee of the government or an independent contractor is the power of the federal government to control the detailed physical performance of the individual." Linkous v. United States, 142 F.3d 271, 275 (5th Cir. 1998); Creel v. United States, 598 F.3d 210, 213 (5th Cir. 2010); Mantiply v. United States of America, 634 Fed.App'x 431, 433 (5th Cir. 2015). However, "a number of other factors that the Restatement (Second) of Agency §220 identifies as relevant" should also be considered. Creel, 598 F.3d at 213; Mantiply, 634 Fed. App'x. at 433. These factors include:

(a) The extent of control, which by the agreement, the master may exercise over the details of the work;

(b) Whether or not the one employed is engaged in a distinct occupation or business;

(c) The kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) The skill required in the particular occupation;

(e) Whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) The length of time for which the person is employed;

(g) The method of payment, whether by the time or by the job;

(h) Whether or not the work is part of the regular business of the employer;

(i) Whether or not the parties believe they are creating the relation of master and servant; and

(j) Whether the principal is or is not in business.

Creel, 598 F.3d at 213-214; Mantiply, 634 Fed. Appx. at 433.

In Mantiply, this court found a sufficient number of factors existed to label a certain medical doctor an employee of the VAMC even though the employment documents cast that doctor as an independent contractor. On appeal, our determination was reversed almost summarily by the Fifth Circuit determining that the doctor was an independent contractor and should have been dismissed.

In the instant case, the majority of the factors weigh in favor of finding that Drs. Hassan and Guerra are independent contractors. Both Dr. Hassan, a Board Certified Cardiologist, and Dr. Guerra, a Board Certified Family Physician, possess specialized skills obtained through years of training. (Doc. 145-6, 145-4). Though the doctors are retained pursuant to a contract to perform medical services at the VAMC, there is no specification as to how the doctors shall fulfill their duties. Rather, the contract indicates the "ability to work independently and without supervision is essential." (Id.). Further, the contract specified a short work term of a few months for both physicians and no party believed the doctors were employees: "At no time shall the contract physician be considered a VA employee for any purpose." (Docs. 145-4 and 6). Accordingly, Drs. Hassan and Guerra are independent contractors, not employees of the VAMC.

As the United States has not waived immunity from suit for acts of independent contractors, this court lacks jurisdiction to hear the claims asserted against the United States for the alleged negligence or fault of Dr. Hassan and/or Dr. Guerra.

### III.   Conclusion

Accordingly, it is hereby

**ORDERED, ADJUDGED AND DECREED** that the Motion to Dismiss (Doc. 145) is **GRANTED** and the plaintiffs' claims pertaining to the actions of Drs. Hassan and Guerra only are

hereby **DISMISSED**. All remaining claims against the United States shall proceed to trial on the matter before the undersigned on December, 19, 2016.

**THUS DONE AND SIGNED** at Alexandria, Louisiana this 17th day of November, 2016.

DEE D. DRELL, CHIEF JUDGE<br>
UNITED STATES DISTRICT COURT